The next case on the calendar is Leitreille v. Gross. Good morning, Your Honors. May it please the Court. My name is Hun Chin Kim, and I represent the defendant appellants in this matter. We are here before you today based upon the district court's denial of qualified immunity to the defendant appellants and based upon multiple points the district court erred in denying qualified immunity to the defendants. In the first instance, the protected speech at issue that Leitreille alleges is a spreadsheet that was disclosed to the FBI containing approximately 104 names of individuals accessed through the Department of Social Services database. Now, when the court first determined that the speech engaged in by Ms. Leitreille was protected speech, what it did was it looked at the information on the spreadsheet collectively as a whole and stated that even though some information might be confidential, others are not, and therefore this is protected speech. And I believe that is an error. For instance, in Connick v. Myers, in that case, where the district attorney ---- Roberts, even assuming it's confidential information, what about the exception that permits disclosure to law enforcement? Why does that exception not apply here? That exception does not apply because when it relates solely ---- If you take a look at the issue separately, that the information contained therein was mortgage fraud and was welfare fraud, looking at the mortgage fraud aspect of it and taking it separately, mortgage fraud is a white-collar crime. And in this instance, the information contained on the spreadsheet, there were individuals whose Social Security numbers ---- There was an issue as to whether the mortgage fraud was related to welfare fraud. But, Your Honors, on the information in the spreadsheet, there were individuals named with public assistance benefits that occurred years, years before she disclosed this information. Thus, they were not on ---- they were not receiving public assistance at that time. So clearly when it relates ---- Some of the individuals were receiving public assistance on the list? Some of them may have. But to that extent, then you look at that information again from a two-prong analysis. If you look solely specifically at the mortgage fraud aspect, I believe that the district court erred in assuming that that was reasonably related to public ---- to the public assistance program. Are you saying that even for the people on the list who were receiving public assistance, that indications that they might be engaged in mortgage fraud are not reasonably related to the purposes of the public welfare program? If you have people that are receiving public assistance who are also receiving money by virtue of mortgage fraud, those are two completely unrelated things? For purposes of the spreadsheet, yes, Your Honors, because it could have been done differently. In this instance, when it related to ---- If they were receiving additional income through their mortgage fraud, would that not impact their eligibility for public benefits? It may. But in the first instance, when you look at it from the point of view of the public assistance program, that information, that work, is part of the plaintiff's work in the Department of Social Services. She's a social welfare examiner. She was charged with responsibility of recertifying individuals to see if they are, in fact, eligible for public assistance. In order to get an interlocutory appeal, you have to accept the facts as alleged by the plaintiff. Are you prepared to accept the proposition that the list that you're talking about, the spreadsheet that was given to the public officials, was not prepared within the scope of the plaintiff's responsibilities? Well, Your Honor, that was procedurally ---- Throughout the history of this case, it was alleged that the investigation done by Ms. Latrey dealt with mortgage fraud, and yes. No, no. It's a simple question. Are you prepared to accept the plaintiff's proposition as a matter of fact that the list was not prepared within the scope of her responsibilities? Your Honor, I do not believe that is a material question of fact. That is a question of law. Her characterization ---- How could that not be a question of fact? There are lots of cases that talk about this is a factual question. It depends upon all of the facts and circumstances. Here the charges said that it was ---- that the list was not prepared within the scope of her responsibilities. She says she prepared it for at least a large part of it while she was home for three weeks. So there are various factors to be taken into account. The plaintiff alleges that the list was not prepared within the scope of her responsibilities. And my question is, are you prepared to accept that or not? Your Honor, I am prepared to accept the facts that she relies on to make the characterization that it was not within the scope of responsibilities. However, there have been many cases before this circuit where the plaintiffs or the individuals allege that their duties are outside the scope of the employment. However, it is the court's responsibility to look at the underlying facts and to look at what that individual actually did based upon the undisputed facts to make the determination as to whether or not it was within the scope of those responsibilities. Even the underlying facts. I mean, your client, the charges, charges 1 and charge 2, clearly seem to indicate to allege that she was using the electronics communication system and engaged in activities that were outside the scope of her employment responsibilities. Well, your Honor, if you look at the charges directly, it doesn't solely – it makes reference to both confidential and public records as a whole. It makes reference to the confidential database. And when it makes reference to that confidential database, when this individual divulged confidential information about mortgage fraud, yes, that was outside the scope of her employment. However, because it was confidential, the court erred in deeming it protected speech. To the extent that the information that was disclosed therein related to the public welfare benefit system, again, Ms. Latrey testified and the facts were clear that as a social welfare examiner, that is what she did. If she uncovered potential discrepancies or potential fraud in welfare benefits, she was supposed to report that. Now, to the extent that the court found that it was protected speech and then went on, here the court erred in determining that the defendants were not entitled to qualified immunity because the right was not clearly established. In this instance, you have a combination of an allegation that the individual was engaged in both welfare fraud investigation and mortgage fraud investigation. It is the defendant's contention that as it relates to the welfare fraud, obviously that's within the scope of her employment, but as it relates to the mortgage fraud, it was not. There is no case either within this circuit or the Supreme Court that has clearly established what is an amalgamation of both confidential and nonconfidential information, that that right is protected, that that is protected speech. If there's nothing further. Thank you. You've reserved some rebuttal time. Good morning, Your Honors. Michael Sussman representing Ms. Littrell. I think this is a fairly straightforward appeal, respectfully, and I think that as Judge Cotel has indicated in his questions, a lot of these arguments are inconsistent, frankly, with the positions that have been taken below and were taken in the charges by the county. So let me just try to unpack that a little bit. The county charged from the outset that Ms. Littrell, in everything she did, making no distinction between mortgage fraud and public welfare fraud, engaged in conduct which was outside of the scope of her responsibilities, a finding that the district court accepted in its decision. The reason the district court accepted that in its decision was because the court saw as inextricably linked what Ms. Littrell did with regard to the issues. The court did not see, nor is it logical to see these as somehow polar issues. They're not polar. They're inextricably connected. That is, people who are engaging in the mortgage fraud were also concurrently defrauding the public welfare system. And that's what Ms. Littrell reported. Now, with regard to the issue of did she engage in behavior outside of her work responsibilities, counsel just told you that part of Ms. Littrell's responsibility was to, in fact, try to extirpate fraud. However, as the district court properly held, that went so far. That was to report to the fraud unit of the Department of Social Services the evidence she had collected of fraud. She did that, and when that fraud unit was ineffectual, Was it part of her job to uncover welfare fraud? It may have been. I would say no, but let's assume it was. It's not really alleged that it was, but let's assume it was. It was not part of her job to proceed as she did to the FBI or to make known that fraud beyond. Was it her supervisor who suggested that she speak to the FBI? Her supervisor facilitated that. I believe it was Ms. Littrell's desire to do that, but she did facilitate it. That would suggest that it was within her scope, then, if her supervisor is suggesting that she do it. Well, let me say that the supervisor, the record shows, was also disciplined for acting outside the scope of her duties. So I think that undercuts that argument to a large extent. The county took the position and, in fact, retrieved from the FBI the spreadsheet, taking the position that the disclosure was a disclosure which couldn't be made either by her or her supervisor. So I don't think either were acting from the county's point of view within the scope of their employment. The county's position was that both, all of that was ultra various with regard to their employment. And they retrieved the entire list, not just those names on the list that were not there. That's accurate, Your Honor. That's correct, Judge. So this distinction which is now being articulated I don't think is accurate. I mean, frankly, this, this, the closest case I've seen to this is the case that you adjudicated, Judge Coltell, actually, a Netter-Thomas case in the district court, where what actually happened is an individual was a social worker within the Department of Corrections. The social worker was repeatedly told, you are not to do this, meaning discuss brutality and racism with the prison guards. She was ultimately terminated. After her termination, she came to the district court and said she was terminated for, contrary to the First Amendment, because she was engaging in discussions and this is why they say they terminated her, about racism and prison brutality outside of her job function. Before the court, the district court, the defendant argued the exact opposite, that they terminated her, this was part of her job duties. And the district court, I think, correctly said in that case, no, you can't have it both ways. And I think that's what's going on here. If you read the charges, as Judge Seibel read, the charges make clear that they were disciplining her for things that they believed were outside of her job duties and responsibilities. With regard to qualified immunity, I believe this is not an appropriate appeal, which is why I asked for it at this point to be dismissed after briefing, because it's pretty clear that there is, on the facts, most favorably taken to the point if no doubt that she was acting outside the scope for responsibility and was punished because of that. Unless the Court has any other questions, I'll rest on my submission. Thank you for your assistance. Just to address a few points with regard to the appellee's argument that the defendants are now saying something different than what they said in the lower courts, I believe Judge Seibel cited to in the brief make specific reference to statements made by counsel during the discovery phase, during the deposition, and specifically states she already told you that the entire project was about mortgage fraud, which is as the complaint alleges. Based upon those statements that she made during the course of the investigation, that is why the county conceded when it deals with mortgage fraud, DSS, the Department of Social Services, does not investigate mortgage fraud, and therefore that investigation was outside the scope of her employment. And that was why that was alleged in the lower courts. The only time that it was alleged that welfare fraud benefits were now being investigated by Ms. Latreille was after the summary judgment motion was filed and then the argument was made that when it relates to mortgage fraud, that information is not protected because it violated state regulations and statutes. And so when that occurred in the opposition, that is the first time that Ms. Latreille now said, oh, this investigation, contrary to what was represented during discovery, contrary to what was represented during the investigation, which is in the record as to the statements that Ms. Latreille made to both the commissioners, Gross and Miller, this is the first time that she said it's a combination of mortgage fraud and benefits fraud. Roberts. You don't think that the existence of mortgage fraud has any bearing on eligibility for benefits, welfare benefits? That's put in the cart before the horse, Your Honor. Within the Department of Social Services, they don't look to mortgage fraud and do that type of investigation. They're solely ---- If some of these folks are receiving welfare benefits and if they are also getting income from mortgage fraud, does that not go to their eligibility for public benefits? It does, but then when it goes to the ---- And if it does, then why doesn't it fall within the exception? If the individual is falsifying information about low income and it relates to the public benefits program, that can be severed from the mortgage fraud. The mortgage fraud did not have to come about and confidential information did not have to be released concerning the mortgage fraud. You say that the plaintiff has changed her position, but doesn't your argument raise issues of fact as to whether this was or was not within the scope of the plaintiff's responsibilities? Your Honor. Once you begin disputing what you say is the plaintiff's most recent allegations, then you're not in the position of an interlocutory appeal, accepting all of the facts that, as the plaintiff now alleges them to be. Your Honor, I was just making reference to the argument that it was a new argument, that this is the first time we were saying that it was outside the scope of her employment. However, because plaintiff alleged that it was outside the scope of her employment and because it was public in addition to mortgage fraud, those facts were assumed by defendants when this interlocutory appeal was filed. We didn't just solely argue, oh, no, no, no, all of it is outside the scope of employment. We argued both the public welfare fraud and the mortgage fraud, the facts as alleged by Ms. Latreille. Thank you both for your arguments.